# EXHIBIT A

ASSET OWNERSHIP
AGREEMENT

**This Asset Ownership Agreement** (the "Agreement") is made and entered into effective September [11 ], 2024 (the "Effective Date"), by and between Lugano Diamonds & Jewelry, Inc., a California corporation ("Lugano") and Sydney Holdings Limited, an exempted company incorporated with limited liability in the Cayman Islands ("Investor").  Investor and Lugano are also jointly referred to herein as ("Parties") and individually as a ("Party").

### RECITALS

**WHEREAS,** Lugano has purchased a diamond with the following specifications:  6.03 carat, FIG color, VS1, GIA certified via certification #5182660588 ("Diamond") from Gem House ("Seller") for resale to a third-party customer ("Customer"); and

**WHEREAS,** Lugano  purchased the diamond from Seller for Five Million Three Hundred Sixty Thousand and 00/100 Dollars ($5,360,000.00) and has offered Investor the opportunity to participate in the purchase of the Diamond, and Investor is hereby accepting such opportunity on the terms and conditions set forth herein up to an Investment of Two Million Six Hundred Eighty Thousand and 00/100 Dollars ($2,680,000.00) (the "Investment Amount");

**NOW THEREFORE,** in consideration of the mutual and joint promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      The above recitals are incorporated as if set forth at length herein.

2.      Investor shall, upon full execution of this Agreement by all parties which may be done in counterpart and delivered by email or hard copy, promptly transfer to Lugano an amount equal to the Investment Amount to be utilized for the purchase of the Diamond from the Seller.

3.      Upon execution of this Agreement, the Diamond shall be owned 50% by Lugano and 50% by Investor.

4.      Lugano shall maintain insurance for the Diamond, with a minimum coverage amount of $6,000,000.00 during the entire term of this Agreement. Lugano shall be responsible for all other maintenance costs, appraisal costs, and any other costs associated with the Diamond.

5.      On or before the date that is Four (4) months after the Effective Date of this Agreement, Lugano has a customer to sell the Diamond for the amount of $6,550,000.00.  In the event Lugano fails to sell the Diamond during such Four (4) month period, upon five (5) days,  Lugano shall return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to Investor.

6.      Upon the sale of the Diamond to customer, Lugano shall pay to Investor within five (5) business days of the sale the greater of: (a) fifty percent (50%) of the proceeds of the sale of Diamond to customer, or (b) the Investment Amount, plus interest at a rate of 25% per annum.

7.      At any time during the term of this Agreement, for any reason or no reason, at Investor's

{9469684: }

sole and absolute discretion, Investor may cash out of the Investment Amount upon five (5) days written notice to Lugano ("Cash Out Notice"). Upon receipt of such Cash Out Notice, Lugano shall return the Investment Amount to Investor, plus interest at a rate of twenty five percent (25%) per annum within five (5) days after Lugano's receipt of the Cash Out Notice.

8.      Lugano represents and warrants that the Diamond is certified and is currently valued at a price that is 30%-40% greater than $5,360,000.00. In the event that the above representation is false, or the value of the Diamond falls at any time prior to sale to customer, Lugano assumes all risk of such valuation, and Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein, or fifty percent (50%) of the proceeds of a sale of the Diamond to Customer, whichever is greater. Lugano assumes all risk of any damage or other casualty to the Diamond. Upon such damage or casualty, Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein

9.      Notwithstanding anything to the contrary contained in this Agreement, if Lugano is in breach or default of any of its obligations or agreements hereunder when performance is required, or if Lugano otherwise fails to perform in accordance with the terms of this Agreement ("Event of Default"), Investor may immediately demand the greater of: (a) a return of the Investment Amount, plus interest at a rate of 25% per annum or (b) 50% of the proceeds of a sale of the Diamond to customer ("Demand Amount").  Upon an Event of Default by Lugano, the interest on the Demand Amount shall continue to accrue at 25%.

10.     This Agreement shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

11.     Any notice required under this Agreement shall be in writing sent by email to a known address (return receipt requested), registered mail, or overnight mail, postage prepaid, signature required.  All notices shall be deemed effective on the date of receipt, unless otherwise specified herein.

12.     In case of any one or more of the provisions obtained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect such invalidity, illegality, or unenforceability shall not affect the validity of any other provisions of this Agreement, and such provision(s) shall be deemed modified to the extent necessary to make it (them) enforceable.

13.     This Agreement sets forth the entire understanding between the Parties as to the subject matter hereof and shall supersede all documents verbal consents, or understandings made before the conclusion of this Agreement with respect to the subject matter hereof. None of the terms of this Agreement shall be amended or modified except in writing signed by a duly authorized officer or director of each Party to be charged.

14.     Nothing in this Agreement shall be construed to create between the Parties a partnership, association, joint venture, or agency.

15.     The Parties each represent that they are authorized to enter into the Agreement and that each has had its Attorney review the Agreement meaning there shall be no negative interpretation inferences or presumptions  taken against a perceived drafter.

{9469684: }

16.     All parties to this Agreement intend to comply with applicable usury law. All existing and future agreements regarding the transactions evidenced by this Agreement are hereby limited and controlled by the provisions of this Section. In no event shall the interest taken, reserved, contracted for, charged, or received under this Agreement or under any other agreements between the parties, exceed the maximum nonusurious amount permitted by applicable law (the "Maximum Amount"). If, from any construction of any document, interest would otherwise be payable in excess of the Maximum Amount, then ipso facto, such document shall be reformed and the interest payable reduced to the Maximum Amount, without necessity of execution of any amendment or new document. If Investor hereof ever receives interest in an amount which apart from this provision would exceed the Maximum Amount, the excess shall, without penalty, be applied to the unpaid principal of this Agreement in inverse order of maturity of installments and not to the payment of interest or be refunded to Lugano if the principal is paid in full. All interest paid or agreed to be paid to the Investor shall be spread throughout the full term (including any renewal or extension) of the debt so that the amount of interest does not exceed the Maximum Amount.

[Signature Page follows]

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by their respective duly authorized representatives as of the dates below written.

INVESTOR

Sydney Holdings Limited

By: _____

Name: Katherine Tathum  William Messer

Title: Authorized Signatory

Date: Sept-16-2024 _____

Lugano Diamonds and Jewelry, Inc.

By: _____

Name: Mordechai Ferder

Title: CEO

Date:

_____9/11/24_____

_

# EXHIBIT B

## PERSONAL GUARANTY AGREEMENT

**THIS PERSONAL GUARANTY AGREEMENT** (the "Personal Guaranty") is entered into this [11] day of September, 2024, by Moredechai Ferder, a US citizen with Passport number 536910813 and with a mailing address of 1501 Serenade Terrace CDM CA 92625(the "Personal Guarantor"), in favor of Sydney Holdings Limited, an exempted company incorporated with limited liability in the Cayman Islands ("Investor").

## RECITALS

Concurrently with this Personal Guaranty, Investor and Lugano Diamonds & Jewelry, Inc. ("Diamond Buyer") (each a "Party" and collectively the "Parties") entered into a certain Investment Agreement ("Agreement") pursuant to which the Investor agreed to invest Two Million Six Hundred Eighty Thousand and 00/100 Dollars ($2,680,000.00) with the Diamond Buyer to buy a certain diamond with the following specifications: 6.03 carat, FIG color, VS1, GIA certified via certification #5182660588("Diamond").

In partial consideration for, and as an inducement to Investor to enter into the Agreement, Personal Guarantor has agreed to personally guaranty the obligations of Diamond Buyer under the Agreement.

## AGREEMENT

**NOW,** THEREFORE, in consideration of the mutual promises of this Personal Guaranty and the Agreement, and intending to be legally bound hereby, the Parties hereto agree as follows:

1. DEFINITIONS

1.1. Definitions. Capitalized terms that are not otherwise defined herein shall have the meaning set forth in the Agreement. If there is a conflict between a definition herein and a definition in the Agreement, the definition in the Agreement shall control.

2. GUARANTY OF PAYMENT AND PERFORMANCE

2.1. Unconditional Guaranty. The Personal Guarantor hereby unconditionally guarantees to the Investor the full and punctual payment as and when due of any and all amounts due from Diamond Buyer to Investor under the Agreement.

2.2. Nature of Guaranty. This Personal Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment as and when due of any and all amounts due from Diamond Buyer to Investor under the Agreement, and not of its collectability only, and shall remain in force until the full satisfaction of Diamond Buyer's payment obligations under the Agreement.

2.3. Obligation of Personal Guarantor. Upon Diamond Buyer's failure to pay any amounts due under the Agreement, the obligations of the Personal Guarantor hereunder (the

"Indebtedness") shall automatically become due and payable to the Investor, without notice or demand.

2.4.    Agreement to Pay Costs and Expenses.  The Personal Guarantor agrees to pay to the Investor, on demand, all reasonable costs and expenses (including reasonable court costs and legal expenses) incurred or expended by the Investor in connection with the enforcement of this Personal Guaranty and/or the collection of all sums guaranteed hereunder, whether such collection be from Diamond Buyer or from the Personal Guarantor.

3.    WAIVERS BY THE PERSONAL GUARANTOR; THE INVESTORS'S FREEDOM TO ACT

3.1.    Diamond Buyer's Impairment.  The obligations of the Personal Guarantor to make payment in accordance with the terms of this Personal Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Buyer or its estate in bankruptcy or reorganization resulting from the operation of any present or future provision of the United States Bankruptcy Code or other statute or from the decision of any court.

3.2.    Agreement to Agreement and All Amendments.  Without limiting the generality of any term, condition or obligation herein, the Personal Guarantor agrees to the provisions of the Agreement, and agrees that the obligations of the Personal Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of the Investor to assert any claim or demand or to enforce any right or remedy against Diamond Buyer or any other Defendant; (ii) any extensions or renewals of any of Diamond Buyer's obligation to pay any amounts due under the Agreement; (iii) any terminations, invalidations, rescissions, waivers, amendments or modifications of any portion of the Agreement that do not expressly relieve Diamond Buyer and Personal Guarantor of their obligation to pay the amounts due under the Agreement; (iv) the substitution or release of any entity primarily or secondarily liable for payment of the amounts due under the Agreement; or (v) any other act or omission which might in any manner or to any extent vary the risk of Diamond Buyer or otherwise operate as a release or discharge of Diamond Buyer, all of which may be done without notice to the Personal Guarantor.

3.3.    Waiver of Notice.  Notice of the acceptance of this Personal Guaranty and notice of transactions entered into in reliance hereof are hereby waived. The Personal Guarantor consents to any renewal, extension or postponement of the time of payment of any of Diamond Buyer's obligation to pay the amounts due under the Agreement or to any other forbearance or indulgence with respect thereto and consents to any substitution, exchange, modification or release of any security therefore or the release of any other person primarily or secondarily liable on any of Diamond Buyer's obligation to pay the amounts due under the Agreement, whether or not notice thereof shall be given to the Personal Guarantor, and agrees to the provisions of any instrument, security or other writing evidencing or securing Buyer's obligation to pay the amounts due under the Agreement, and the enforcement hereof shall not be affected by the delay, neglect or failure of Investor to take any action with respect to any

security, right, obligation, endorsement, guaranty or other means of collecting the full amounts due from Diamond Buyer which it may at any time hold, including perfection or enforcement thereof, or any change with respect to Diamond Buyer in the form or manner of doing business, whether by incorporation, consolidation, merger, partnership formation or change in membership, or otherwise, it being hereby agreed that Personal Guarantor shall be and remain bound upon this Personal Guaranty irrespective of any action, delay or omission by Investor in dealing with Diamond Buyer, Diamond Buyer's obligation to pay the full amounts due under the Agreement, the Agreement or any person at any time liable with respect thereto.

4.    UNENFORCEABILITY OF OBLIGATIONS AGAINST DIAMONDBUYER

4.1.    Diamond Buyer's Obligations. If for any reason Diamond Buyer has no legal existence or is under no legal obligation to discharge any of its obligations to pay the full amounts due under the Agreement, or if the full amounts due under the Agreement cannot be recovered from Diamond Buyer by operation of law or for any other reason, this Personal Guaranty shall nevertheless be binding on the Personal Guarantor to the same extent as if the Personal Guarantor at all times had been the principal obligor on the obligation to pay the full amounts due under the Agreement, and all amounts due under this Personal Guaranty and the Agreement shall become immediately due and payable.

4.2.    Stay Buyer's Obligations. If payment of the full amount due under the Agreement is stayed, in whole or in part, upon the insolvency, bankruptcy or reorganization of Diamond Buyer, or for any other reason, all such amounts otherwise subject to acceleration under the terms of the Agreement shall be immediately due and payable by the Personal Guarantor.

5.    SUBROGATION and SUBORDINATION

5.1.    Subordination by Personal Guarantor. Until the payment and performance in full of all Diamond Buyer's payment obligations under the Agreement, the Personal Guarantor shall not:

5.1.1.   exercise any right against Diamond Buyer arising as a result of payment by the Personal Guarantor hereunder, by way of subrogation or otherwise;

5.1.2.   prove any claim in competition with the Investor, or its affiliates, in respect of any payment hereunder, in bankruptcy or insolvency proceedings of any nature; or

5.1.3.   claim any set-off or counterclaim against Diamond Buyer or Investor in respect of any liability of the Personal Guarantor to Diamond Buyer or Investor.

5.2.    Subordination Following Default. During a continuing Event of Default under the Agreement, the payment of any amounts due with respect to any indebtedness of Diamond Buyer now or hereafter held by the Personal Guarantor is hereby subordinated to the prior payment in full of the amounts due under the Agreement.

5.3.    <u>Waiver of Demand Rights</u>.  During a continuing Event of Default under the Agreement, the Personal Guarantor agrees that it will not demand, sue for or otherwise attempt to collect any indebtedness of Diamond Buyer to him, until the amounts due under the Agreement are paid in full.

6.    <u>REPRESENTATIONS, WARRANTIES AND COVENANTS</u>

The Personal Guarantor represents, warrants and further covenants the following:

6.1.    The execution and delivery of this Personal Guaranty, the consummation of the transactions contemplated hereby and the fulfillment of or compliance with the terms and conditions of this Personal Guaranty, are not prevented or limited by, or do not conflict with or result in a breach of the terms, conditions or provisions of any contractual or other restriction on the Personal Guarantor or any agreement or instrument of whatever nature to which Personal Guarantor is now a party or by which Personal Guarantor or the Personal Guarantor's property is bound or constitutes a default under any of the foregoing.

6.2.    This Personal Guaranty constitutes a valid and legally binding obligation of the Personal Guarantor, enforceable in accordance with its terms.

7.    <u>MISCELLANEOUS</u>

7.1.    <u>Continuing Obligation to Cooperate</u>. The Personal Guarantor agrees to execute and deliver to the Investor all such other and further instruments and documents and take or cause to be taken all such other and further action as the Investor may reasonably request in order to effect and confirm or vest more securely in the Investor all rights contemplated in this Personal Guaranty.

7.2.    <u>Amendments</u>.  This Personal Guaranty may be amended only by an instrument in writing and duly signed by the Personal Guarantor and Investor.

7.3.    <u>Enforceability</u>.  If any provisions of this Personal Guaranty shall be held to be illegal or unenforceable, such illegality or unenforceability shall relate solely to such provision and shall not affect the remainder of this Personal Guaranty.

7.4.    <u>Venue.</u>  The Personal Guarantor and Investor agree that any action or proceeding to enforce or arising out of this Personal Guaranty may be commenced in the Federal Courts in the State of New York.

7.5.    <u>Service of Process</u>. The Personal Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to the Personal Guarantor, or as otherwise provided by the laws of the State of New York or the United States of America.

7.6.    <u>No Waiver, Remedies Cumulative</u>.  No failure on the part of Investor to exercise, and no delay in exercising, any right hereunder or under the Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  All rights and remedies herein provided are cumulative and are in addition to any other remedies provided by law, the Agreement or otherwise.

7.7.    <u>Survival of Representations</u>.  All representations, warranties and covenants made herein shall survive the amendment to the Agreement and shall continue in full force and effect so long as any Indebtedness is outstanding and until this Personal Guaranty is formally terminated in writing.

7.8.    <u>Indemnity By Personal Guarantor</u>.  In addition to all other Indebtedness, the Personal Guarantor agrees to defend, protect, indemnify and hold harmless the Investor, and all of its officers, directors, members, employees, attorneys, accountants, consultants, agents and any controlling persons (collectively the "<u>Indemnified Parties</u>") from and against any and all losses, claims, damages, liabilities, obligations, penalties, fees, costs, expenses and settlement agreements, joint and several (including, without limitation, reasonable attorneys' and paralegals' fees, costs and expenses) incurred by any of the Indemnified Parties as a result of or arising from or relating to the Investor's pursuit of the Indebtedness, whether or not by or through attorneys and whether suit be brought or not and whether incurred at trial or on appeal.

7.9.    <u>Reinstatement</u>. Notwithstanding anything herein to the contrary, this Personal Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by the Investor in respect of the Indebtedness is rescinded or must otherwise be restored or returned by the Investor upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Diamond Buyer, or upon the appointment of any receiver, assignee, intervener or conservator of, or trustee or similar official for, Diamond Buyer or any substantial part of its properties, or otherwise, all as though such payments had not been made.

7.10.    <u>Notices</u>.  Unless otherwise specifically provided herein, any notice delivered under this Personal Guaranty shall be transmitted in accordance with the Notice provision set forth in the Agreement.

7.11.    <u>Governing Law</u>.  This Personal Guaranty shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

7.12.    <u>Successors</u>.  This Personal Guaranty shall be binding upon and shall inure to the benefit of Personal Guarantor and the Investor, and their respective successors.

7.13.    <u>Assignment</u>.  The Personal Guarantor may not assign any of his rights, obligations, covenants, representations, warranties, duties or responsibilities hereunder and under the Agreement.  Any such assignment is void.  The Investor may assign all or part of its rights hereunder and under the Agreement, at any time.

7.14.    Counterparts.  This Personal Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts (including facsimile or other electronic transmission), each of which when so executed and delivered shall be deemed an original and all of which when taken together shall constitute but one and the same instrument. Electronic copies of signatures shall be as good and binding as original signatures.

7.15.    Captions.  The captions herein contained are inserted as a matter of convenience only and such captions do not form a part of this Personal Guaranty and shall not be utilized in the construction hereof.

7.16.    Approvals.  If this Personal Guaranty calls for the approval or consent of Investor, such approval or consent may be given or withheld in the discretion of Investor unless otherwise specified herein.

7.17.    No Punitive Damages.  Each party agrees that it shall not have a remedy of punitive or exemplary damages against the other in any Dispute and hereby waives any right or claim to punitive or exemplary damages it may have now or which may arise in the future in connection with any Dispute.

7.18.    Waiver of Jury Trial. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY *JURY* IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS PERSONAL GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT   O R   ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HERETO HAS BEEN INDUCED TO ENTER INTO THIS PERSONAL GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.18.

7.19.    Joint and Several Obligations.  All Indebtedness, representations, warranties, covenants and indemnities set forth herein and in the Agreement shall be joint and several among Diamond Buyer and Personal Guarantor and any other guarantors.

7.20.    Waiver of Certain Defenses. All rights of Investor and all obligations of the Personal Guarantor hereunder and under the Agreement shall be absolute and unconditional irrespective of (i) any change in the time, manner or place of payment of, or any other term of, all or any of the Indebtedness, or any other amendment or waiver of or any consent to any departure from any provision of the Agreement, (ii) any release or amendment or waiver of or consent to departure from any guaranty for all or any of the Indebtedness, or (iii) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Diamond Buyer, Personal Guarantor or any third party, other than payment and performance in full of the Indebtedness.

7.21.        <u>Terms Generally</u>. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "will" shall be construed to have the same meaning and effect as the word "shall".  Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Personal Guaranty in its entirety and not to any particular provision hereof, (d) all references herein to Articles, Sections, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Exhibits and Schedules to, this Personal Guaranty and (e) the word "asset" shall be construed to the have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

*[Remainder of the page is blank.  Signatures appear on the following page.]*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Personal Guaranty Agreement as of the day and year first above written.

**PERSONAL GUARANTOR:**

By: _____

Moredechai Ferder

**INVESTOR:**

SYDNEY HOLDINGS LIMITED

By: _____
Name: Katherine Tathum   William Messer
Title: Authorized Signatory

Date: Sept-16-2024 _____

# EXHIBIT C

# ASSET OWNERSHIP
# AGREEMENT

**This Asset Ownership Agreement** (the "Agreement") is made and entered into effective November 14, 2024 (the "Effective Date"), by and between Lugano Diamonds & Jewelry, Inc., a California corporation ("Lugano") and Sydney Holdings Limited, an exempted company incorporated with limited liability in the Cayman Islands ("Investor"). Investor and Lugano are also jointly referred to herein as ("Parties") and individually as a ("Party").

## RECITALS

**WHEREAS,** Lugano has purchased a diamond with the following specifications: 8.03 carat, FVP color, VS1, GIA certified via certification #2191463494 ("Diamond") from Novel ("Seller") for resale to a third-party customer ("Customer"); and

**WHEREAS,** Lugano purchased the diamond from Seller for Five Million Eight Hundred Thousand and 00/100 Dollars ($5,800,000.00) and has offered Investor the opportunity to participate in the purchase of the Diamond, and Investor is hereby accepting such opportunity on the terms and conditions set forth herein up to an Investment of Two Million Nine Hundred Thousand and 00/100 Dollars ($2,900,000.00) (the "Investment Amount");

**NOW THEREFORE,** in consideration of the mutual and joint promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      The above recitals are incorporated as if set forth at length herein.

2.      Investor shall, upon full execution of this Agreement by all parties which may be done in counterpart and delivered by email or hard copy, promptly transfer to Lugano an amount equal to the Investment Amount to be utilized for the purchase of the Diamond from the Seller.

3.      Upon execution of this Agreement, the Diamond shall be owned 50% by Lugano and 50% by Investor.

4.      Lugano shall maintain insurance for the Diamond, with a minimum coverage amount of $6,500,000.00 during the entire term of this Agreement. Lugano shall be responsible for all other maintenance costs, appraisal costs, and any other costs associated with the Diamond.

5.      On or before the date that is three (3) months after the Effective Date of this Agreement, Lugano has a customer to sell the Diamond for the amount of $7,100,000.00. In the event Lugano fails to sell the Diamond during such three (3) month period, upon five (5) days, Lugano shall return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to Investor.

6.      Upon the sale of the Diamond to customer, Lugano shall pay to Investor within five (5) business days of the sale the greater of: (a) fifty percent (50%) of the proceeds of the sale of Diamond to customer, or (b) the Investment Amount, plus interest at a rate of 25% per annum.

7.      At any time during the term of this Agreement, for any reason or no reason, at Investor's

sole and absolute discretion, Investor may cash out of the Investment Amount upon five (5) days written notice to Lugano ("Cash Out Notice"). Upon receipt of such Cash Out Notice, Lugano shall return the Investment Amount to Investor, plus interest at a rate of twenty five percent (25%) per annum within five (5) days after Lugano's receipt of the Cash Out Notice.

8.      Lugano represents and warrants that the Diamond is certified and is currently valued at a price that is 30%-40% greater than $5,800,000.00. In the event that the above representation is false, or the value of the Diamond falls at any time prior to sale to customer, Lugano assumes all risk of such valuation, and Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein, or fifty percent (50%) of the proceeds of a sale of the Diamond to Customer, whichever is greater. Lugano assumes all risk of any damage or other casualty to the Diamond. Upon such damage or casualty, Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein

9.      Notwithstanding anything to the contrary contained in this Agreement, if Lugano is in breach or default of any of its obligations or agreements hereunder when performance is required, or if Lugano otherwise fails to perform in accordance with the terms of this Agreement ("Event of Default"), Investor may immediately demand the greater of: (a) a return of the Investment Amount, plus interest at a rate of 25% per annum or (b) 50% of the proceeds of a sale of the Diamond to customer ("Demand Amount"). Upon an Event of Default by Lugano, the interest on the Demand Amount shall continue to accrue at 25%.

10.     This Agreement shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

11.     Any notice required under this Agreement shall be in writing sent by email to a known address (return receipt requested), registered mail, or overnight mail, postage prepaid, signature required. All notices shall be deemed effective on the date of receipt, unless otherwise specified herein.

12.     In case of any one or more of the provisions obtained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect such invalidity, illegality, or unenforceability shall not affect the validity of any other provisions of this Agreement, and such provision(s) shall be deemed modified to the extent necessary to make it (them) enforceable.

13.     This Agreement sets forth the entire understanding between the Parties as to the subject matter hereof and shall supersede all documents verbal consents, or understandings made before the conclusion of this Agreement with respect to the subject matter hereof. None of the terms of this Agreement shall be amended or modified except in writing signed by a duly authorized officer or director of each Party to be charged.

14.     Nothing in this Agreement shall be construed to create between the Parties a partnership, association, joint venture, or agency.

15.     The Parties each represent that they are authorized to enter into the Agreement and that each has had its Attorney review the Agreement meaning there shall be no negative interpretation inferences or presumptions taken against a perceived drafter.

{9469684: }

16.     All parties to this Agreement intend to comply with applicable usury law. All existing and future agreements regarding the transactions evidenced by this Agreement are hereby limited and controlled by the provisions of this Section. In no event shall the interest taken, reserved, contracted for, charged, or received under this Agreement or under any other agreements between the parties, exceed the maximum nonusurious amount permitted by applicable law (the "Maximum Amount"). If, from any construction of any document, interest would otherwise be payable in excess of the Maximum Amount, then ipso facto, such document shall be reformed and the interest payable reduced to the Maximum Amount, without necessity of execution of any amendment or new document. If Investor hereof ever receives interest in an amount which apart from this provision would exceed the Maximum Amount, the excess shall, without penalty, be applied to the unpaid principal of this Agreement in inverse order of maturity of installments and not to the payment of interest or be refunded to Lugano if the principal is paid in full. All interest paid or agreed to be paid to the Investor shall be spread throughout the full term (including any renewal or extension) of the debt so that the amount of interest does not exceed the Maximum Amount.

[Signature Page follows]

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by their respective duly authorized representatives as of the dates below written.

INVESTOR

Sydney Holdings Limited

By: _____

Name: Katherine Tathum    William Messer

Title: Authorized Signatory

Date: _____Nov-18-2024_____

Lugano Diamonds and Jewelry, Inc.

By: _____

Name: Mordechai Ferder

Title: CEO

Date:

_____11/14/24_____

_

# EXHIBIT D

## PERSONAL GUARANTY AGREEMENT

**THIS PERSONAL GUARANTY AGREEMENT** (the "Personal Guaranty") is entered into this 18 day of November, 2024, by Moredechai Ferder, a US citizen with Passport number 536910813 and with a mailing address of 1501 Serenade Terrace CDM CA 92625(the "Personal Guarantor"), in favor of Sydney Holdings Limited, an exempted company incorporated with limited liability in the Cayman Islands ("Investor").

## RECITALS

Concurrently with this Personal Guaranty, Investor and Lugano Diamonds & Jewelry, Inc. ("Diamond Buyer") (each a "Party" and collectively the "Parties") entered into a certain Investment Agreement ("Agreement") pursuant to which the Investor agreed to invest Two Million Six Hundred Eighty Thousand and 00/100 Dollars ($2,900,000.00) with the Diamond Buyer to buy a certain diamond with the following specifications: 8.03 carat, FVP color, VS1, GIA certified via certification #2191463494 ("Diamond").

In partial consideration for, and as an inducement to Investor to enter into the Agreement, Personal Guarantor has agreed to personally guaranty the obligations of Diamond Buyer under the Agreement.

## AGREEMENT

**NOW,** THEREFORE, in consideration of the mutual promises of this Personal Guaranty and the Agreement, and intending to be legally bound hereby, the Parties hereto agree as follows:

1. DEFINITIONS

   1.1.    Definitions.  Capitalized terms that are not otherwise defined herein shall have the meaning set forth in the Agreement.  If there is a conflict between a definition herein and a definition in the Agreement, the definition in the Agreement shall control.

2. GUARANTY OF PAYMENT AND PERFORMANCE

   2.1.    Unconditional Guaranty. The Personal Guarantor hereby unconditionally guarantees to the Investor the full and punctual payment as and when due of any and all amounts due from Diamond Buyer to Investor under the Agreement.

   2.2.    Nature of Guaranty. This Personal Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment as and when due of any and all amounts due from Diamond Buyer to Investor under the Agreement, and not of its collectability only, and shall remain in force until the full satisfaction of Diamond Buyer's payment obligations under the Agreement.

   2.3.    Obligation of Personal Guarantor. Upon Diamond Buyer's failure to pay any amounts due under the Agreement, the obligations of the Personal Guarantor hereunder (the

"Indebtedness") shall automatically become due and payable to the Investor, without notice or demand.

2.4.    Agreement to Pay Costs and Expenses.  The Personal Guarantor agrees to pay to the Investor, on demand, all reasonable costs and expenses (including reasonable court costs and legal expenses) incurred or expended by the Investor in connection with the enforcement of this Personal Guaranty and/or the collection of all sums guaranteed hereunder, whether such collection be from Diamond Buyer or from the Personal Guarantor.

3.    WAIVERS BY THE PERSONAL GUARANTOR; THE INVESTORS'S FREEDOM TO ACT

3.1.    Diamond Buyer's Impairment.  The obligations of the Personal Guarantor to make payment in accordance with the terms of this Personal Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of Buyer or its estate in bankruptcy or reorganization resulting from the operation of any present or future provision of the United States Bankruptcy Code or other statute or from the decision of any court.

3.2.    Agreement to Agreement and All Amendments. Without limiting the generality of any term, condition or obligation herein, the Personal Guarantor agrees to the provisions of the Agreement, and agrees that the obligations of the Personal Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) the failure of the Investor to assert any claim or demand or to enforce any right or remedy against Diamond Buyer or any other Defendant; (ii) any extensions or renewals of any of Diamond Buyer's obligation to pay any amounts due under the Agreement; (iii) any terminations, invalidations, rescissions, waivers, amendments or modifications of any portion of the Agreement that do not expressly relieve Diamond Buyer and Personal Guarantor of their obligation to pay the amounts due under the Agreement; (iv) the substitution or release of any entity primarily or secondarily liable for payment of the amounts due under the Agreement; or (v) any other act or omission which might in any manner or to any extent vary the risk of Diamond Buyer or otherwise operate as a release or discharge of Diamond Buyer, all of which may be done without notice to the Personal Guarantor.

3.3.    Waiver of Notice. Notice of the acceptance of this Personal Guaranty and notice of transactions entered into in reliance hereof are hereby waived. The Personal Guarantor consents to any renewal, extension or postponement of the time of payment of any of Diamond Buyer's obligation to pay the amounts due under the Agreement or to any other forbearance or indulgence with respect thereto and consents to any substitution, exchange, modification or release of any security therefore or the release of any other person primarily or secondarily liable on any of Diamond Buyer's obligation to pay the amounts due under the Agreement, whether or not notice thereof shall be given to the Personal Guarantor, and agrees to the provisions of any instrument, security or other writing evidencing or securing Buyer's obligation to pay the amounts due under the Agreement, and the enforcement hereof shall not be affected by the delay, neglect or failure of Investor to take any action with respect to any

security, right, obligation, endorsement, guaranty or other means of collecting the full amounts due from Diamond Buyer which it may at any time hold, including perfection or enforcement thereof, or any change with respect to Diamond Buyer in the form or manner of doing business, whether by incorporation, consolidation, merger, partnership formation or change in membership, or otherwise, it being hereby agreed that Personal Guarantor shall be and remain bound upon this Personal Guaranty irrespective of any action, delay or omission by Investor in dealing with Diamond Buyer, Diamond Buyer's obligation to pay the full amounts due under the Agreement, the Agreement or any person at any time liable with respect thereto.

4.    <u>UNENFORCEABILITY OF OBLIGATIONS AGAINST DIAMONDBUYER</u>

4.1.    <u>Diamond Buyer's Obligations</u>. If for any reason Diamond Buyer has no legal existence or is under no legal obligation to discharge any of its obligations to pay the full amounts due under the Agreement, or if the full amounts due under the Agreement cannot be recovered from Diamond Buyer by operation of law or for any other reason, this Personal Guaranty shall nevertheless be binding on the Personal Guarantor to the same extent as if the Personal Guarantor at all times had been the principal obligor on the obligation to pay the full amounts due under the Agreement, and all amounts due under this Personal Guaranty and the Agreement shall become immediately due and payable.

4.2.    <u>Stay Buyer's Obligations</u>. If payment of the full amount due under the Agreement is stayed, in whole or in part, upon the insolvency, bankruptcy or reorganization of Diamond Buyer, or for any other reason, all such amounts otherwise subject to acceleration under the terms of the Agreement shall be immediately due and payable by the Personal Guarantor.

5.    <u>SUBROGATION and SUBORDINATION</u>

5.1.    <u>Subordination by Personal Guarantor</u>. Until the payment and performance in full of all Diamond Buyer's payment obligations under the Agreement, the Personal Guarantor shall not:

5.1.1.    exercise any right against Diamond Buyer arising as a result of payment by the Personal Guarantor hereunder, by way of subrogation or otherwise;

5.1.2.    prove any claim in competition with the Investor, or its affiliates, in respect of any payment hereunder, in bankruptcy or insolvency proceedings of any nature; or

5.1.3.    claim any set-off or counterclaim against Diamond Buyer or Investor in respect of any liability of the Personal Guarantor to Diamond Buyer or Investor.

5.2.    <u>Subordination Following Default</u>. During a continuing Event of Default under the Agreement, the payment of any amounts due with respect to any indebtedness of Diamond Buyer now or hereafter held by the Personal Guarantor is hereby subordinated to the prior payment in full of the amounts due under the Agreement.

5.3.    Waiver of Demand Rights.  During a continuing Event of Default under the Agreement, the Personal Guarantor agrees that it will not demand, sue for or otherwise attempt to collect any indebtedness of Diamond Buyer to him, until the amounts due under the Agreement are paid in full.

6.    REPRESENTATIONS, WARRANTIES AND COVENANTS

The Personal Guarantor represents, warrants and further covenants the following:

6.1.    The execution and delivery of this Personal Guaranty, the consummation of the transactions contemplated hereby and the fulfillment of or compliance with the terms and conditions of this Personal Guaranty, are not prevented or limited by, or do not conflict with or result in a breach of the terms, conditions or provisions of any contractual or other restriction on the Personal Guarantor or any agreement or instrument of whatever nature to which Personal Guarantor is now a party or by which Personal Guarantor or the Personal Guarantor's property is bound or constitutes a default under any of the foregoing.

6.2.    This Personal Guaranty constitutes a valid and legally binding obligation of the Personal Guarantor, enforceable in accordance with its terms.

7.    MISCELLANEOUS

7.1.    Continuing Obligation to Cooperate. The Personal Guarantor agrees to execute and deliver to the Investor all such other and further instruments and documents and take or cause to be taken all such other and further action as the Investor may reasonably request in order to effect and confirm or vest more securely in the Investor all rights contemplated in this Personal Guaranty.

7.2.    Amendments.  This Personal Guaranty may be amended only by an instrument in writing and duly signed by the Personal Guarantor and Investor.

7.3.    Enforceability.  If any provisions of this Personal Guaranty shall be held to be illegal or unenforceable, such illegality or unenforceability shall relate solely to such provision and shall not affect the remainder of this Personal Guaranty.

7.4.    Venue.  The Personal Guarantor and Investor agree that any action or proceeding to enforce or arising out of this Personal Guaranty may be commenced in the Federal Courts in the State of New York.

7.5.    Service of Process.  The Personal Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to the Personal Guarantor, or as otherwise provided by the laws of the State of New York or the United States of America.

7.6.        No Waiver, Remedies Cumulative.  No failure on the part of Investor to exercise, and no delay in exercising, any right hereunder or under the Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  All rights and remedies herein provided are cumulative and are in addition to any other remedies provided by law, the Agreement or otherwise.

7.7.        Survival of Representations.  All representations, warranties and covenants made herein shall survive the amendment to the Agreement and shall continue in full force and effect so long as any Indebtedness is outstanding and until this Personal Guaranty is formally terminated in writing.

7.8.        Indemnity By Personal Guarantor.  In addition to all other Indebtedness, the Personal Guarantor agrees to defend, protect, indemnify and hold harmless the Investor, and all of its officers, directors, members, employees, attorneys, accountants, consultants, agents and any controlling persons (collectively the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities, obligations, penalties, fees, costs, expenses and settlement agreements, joint and several (including, without limitation, reasonable attorneys' and paralegals' fees, costs and expenses) incurred by any of the Indemnified Parties as a result of or arising from or relating to the Investor's pursuit of the Indebtedness, whether or not by or through attorneys and whether suit be brought or not and whether incurred at trial or on appeal.

7.9.        Reinstatement. Notwithstanding anything herein to the contrary, this Personal Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by the Investor in respect of the Indebtedness is rescinded or must otherwise be restored or returned by the Investor upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Diamond Buyer, or upon the appointment of any receiver, assignee, intervener or conservator of, or trustee or similar official for, Diamond Buyer or any substantial part of its properties, or otherwise, all as though such payments had not been made.

7.10.    Notices.  Unless otherwise specifically provided herein, any notice delivered under this Personal Guaranty shall be transmitted in accordance with the Notice provision set forth in the Agreement.

7.11.    Governing Law.  This Personal Guaranty shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

7.12.    Successors.  This Personal Guaranty shall be binding upon and shall inure to the benefit of Personal Guarantor and the Investor, and their respective successors.

7.13.    Assignment.  The Personal Guarantor may not assign any of his rights, obligations, covenants, representations, warranties, duties or responsibilities hereunder and under the Agreement.  Any such assignment is void. The Investor may assign all or part of its rights hereunder and under the Agreement, at any time.

7.14.        Counterparts.  This Personal Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts (including facsimile or other electronic transmission), each of which when so executed and delivered shall be deemed an original and all of which when taken together shall constitute but one and the same instrument. Electronic copies of signatures shall be as good and binding as original signatures.

7.15.    Captions.  The captions herein contained are inserted as a matter of convenience only and such captions do not form a part of this Personal Guaranty and shall not be utilized in the construction hereof.

7.16.    Approvals.  If this Personal Guaranty calls for the approval or consent of Investor, such approval or consent may be given or withheld in the discretion of Investor unless otherwise specified herein.

7.17.    No Punitive Damages.  Each party agrees that it shall not have a remedy of punitive or exemplary damages against the other in any Dispute and hereby waives any right or claim to punitive or exemplary damages it may have now or which may arise in the future in connection with any Dispute.

7.18.    Waiver of Jury Trial. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY *JURY* IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS PERSONAL GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT O R ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HERETO HAS BEEN INDUCED TO ENTER INTO THIS PERSONAL GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.18.

7.19.    Joint and Several Obligations.  All Indebtedness, representations, warranties, covenants and indemnities set forth herein and in the Agreement shall be joint and several among Diamond Buyer and Personal Guarantor and any other guarantors.

7.20.    Waiver of Certain Defenses. All rights of Investor and all obligations of the Personal Guarantor hereunder and under the Agreement shall be absolute and unconditional irrespective of (i) any change in the time, manner or place of payment of, or any other term of, all or any of the Indebtedness, or any other amendment or waiver of or any consent to any departure from any provision of the Agreement, (ii) any release or amendment or waiver of or consent to departure from any guaranty for all or any of the Indebtedness, or (iii) any other circumstance which might otherwise constitute a defense available to, or a discharge of, Diamond Buyer, Personal Guarantor or any third party, other than payment and performance in full of the Indebtedness.

7.21.        <u>Terms Generally</u>. The definitions of terms herein shall apply equally to the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation".  The word "will" shall be construed to have the same meaning and effect as the word "shall".  Unless the context requires otherwise (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth herein), (b) any reference herein to any Person shall be construed to include such Person's successors and assigns, (c) the words "herein", "hereof" and "hereunder", and words of similar import, shall be construed to refer to this Personal Guaranty in its entirety and not to any particular provision hereof, (d) all references herein to Articles, Sections, Exhibits and Schedules shall be construed to refer to Articles and Sections of, and Exhibits and Schedules to, this Personal Guaranty and (e) the word "asset" shall be construed to the have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

*[Remainder of the page is blank.  Signatures appear on the following page.]*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Personal Guaranty Agreement as of the day and year first above written.

**PERSONAL GUARANTOR:**

By: _____

    Moredechai Ferder

**INVESTOR:**

SYDNEY HOLDINGS LIMITED

By: _____

Name: Katherine Tathum    William Messer

Title: Authorized Signatory

Date:___Nov-18-2024_____

# EXHIBIT E

# *SYDNEY HOLDINGS LIMITED*

64 SHEDDEN ROAD, 4ᵀᴴ FLOOR ANDERSON SQUARE
PO BOX 10324
GRAND CAYMAN, KY1-1003
CAYMAN ISLANDS

May 15, 2025

VIA FEDEX

Lugano Diamonds and Jewelry Inc.
545 Newport Center Drive
Newport Beach, CA 92660

> Re:     Asset Ownership Agreement dated November 14, 2024 ("Agreement") by and between Lugano Diamonds & Jewelry, Inc. ("Lugano") and Sydney Holdings Limited ("Investor") for 50% ownership of a diamond described as follows: 26.63 carat, D Color, VVS1, GIA certified via certification #7235072441.

To Whom it May Concern:

We write in regard to that certain Asset Ownership Agreement dated February 6, 2024 ("Agreement") by and between Lugano Diamonds & Jewelry, Inc. ("Lugano") and Sydney Holdings Limited ("Investor") for 50% ownership of a diamond described as follows: 8.03 carat, FVP color, VS1, GIA certified via certification #2191463494 (the "Diamond"), as secured by that certain Personal Guaranty Agreement dated November 18, 2024, as given by Mordechai Ferder in favor of Investor (the "Guaranty").[1]

Notice is hereby given that Lugano is in default of its obligations to Investor. Specifically, Section 5 of the Agreement provides that in the event Lugano failed to sell the Diamond within three (3) months following the Effective Date, "Lugano shall return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to Investor. More than three months has elapsed since the Effective Date, yet Lugano has failed to remit to Investor its share of the proceeds from the sale of the Diamond (pursuant to Section 6 of the Agreement) and failed to return to Investor its Investment Amount plus interest (per Section 5 of the Agreement).

Pursuant to Section 9 of the Agreement, Lugano's breach constitutes an Event of Default. Investor hereby demands the immediate payment of the Demand Amount of $3,281,912.92.

---

[1] Unless otherwise specified herein, all capitalized terms used and not defined herein have the respective meanings given to them in the Agreement.

{9854664: }

Please be advised that Investor has the present right to enforce its rights and exercise its remedies under the Agreement. Moreover, pursuant to Section 9 of the Agreement, interest on the Demand Amount shall continue to accrue interest at the rate of 25%.

The enumeration of the foregoing defaults shall not be deemed a waiver of any past, present or future violation or default of Lugano under the Agreement, and shall not directly or indirectly in any way whatsoever either: (a) impair, prejudice or otherwise adversely affect Investor's rights at any time to exercise any right, privilege or remedy in connection with the Agreement or any other contract or instrument, (b) amend or alter any provision of the Agreement or any other contract or instrument or (c) constitute any course of dealing or other basis for altering any obligation of Lugano or any right, privilege or remedy of Investor under the Agreement or any other contract or instrument or constitute any consent by Investor to any prior, existing or future violations of the Agreement. Moreover, the past or future acceptance by Investor of any partial payments shall not constitute a wavier or estoppel against Investor and shall not alter the fact that Lugano is in default under the Agreement due to the failure to pay the entire sums due.

Investor hereby reserves (a) all of its respective rights, privileges and remedies under the Agreement and each other contract or instrument executed by Lugano for the benefit of Investor, and that all of the other terms, provisions and conditions of the Agreement and such other contracts and instruments shall remain and continue in full force and effect and (b) the right to take any and all such actions, and to exercise all such rights and remedies, as are accorded to Investor under the Agreement and/or at law or in equity, and at such time or times as Investor deems appropriate.

Neither this letter nor any statement by or on behalf of Investor as to the amount due and owing under the Agreement: (i) shall constitute a waiver of any rights of Investor to collect any additional amounts to which Investor may be lawfully entitled pursuant to the terms of the Agreement or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Investor under the Agreement.

Thank you for your prompt attention to this matter.

Very truly yours,

Sydney Holdings Limited

By: _____
Katherine Tathum
Director FCFL Directors Limited

By: _____
William Messer
Director-FCFL Directors Limited

Cc:    (via FedEx & Email)
       Mordechai Ferder
       1501 Serenade Terrace
       Corona Del Mar, California 92625
       moti@luganodiamonds.com

       (via Email only)
       Coates Lear, Esq. (coateslear@sgslitigation.com)
       James P. Pronti, Esq. (jpronti@woodsoviatt.com)

ASSET OWNERSHIP
AGREEMENT

**This Asset Ownership Agreement** (the "Agreement") is made and entered into effective November 14, 2024 (the "Effective Date"), by and between Lugano Diamonds & Jewelry, Inc., a California corporation ("Lugano") and Sydney Holdings Limited, an exempted company incorporated with limited liability in the Cayman Islands ("Investor"). Investor and Lugano are also jointly referred to herein as ("Parties") and individually as a ("Party").

## RECITALS

**WHEREAS,** Lugano has purchased a diamond with the following specifications: 8.03 carat, FVP color, VS1, GIA certified via certification #2191463494 ("Diamond") from Novel ("Seller") for resale to a third-party customer ("Customer"); and

**WHEREAS,** Lugano purchased the diamond from Seller for Five Million Eight Hundred Thousand and 00/100 Dollars ($5,800,000.00) and has offered Investor the opportunity to participate in the purchase of the Diamond, and Investor is hereby accepting such opportunity on the terms and conditions set forth herein up to an Investment of Two Million Nine Hundred Thousand and 00/100 Dollars ($2,900,000.00) (the "Investment Amount");

**NOW THEREFORE,** in consideration of the mutual and joint promises set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    The above recitals are incorporated as if set forth at length herein.

2.    Investor shall, upon full execution of this Agreement by all parties which may be done in counterpart and delivered by email or hard copy, promptly transfer to Lugano an amount equal to the Investment Amount to be utilized for the purchase of the Diamond from the Seller.

3.    Upon execution of this Agreement, the Diamond shall be owned 50% by Lugano and 50% by Investor.

4.    Lugano shall maintain insurance for the Diamond, with a minimum coverage amount of $6,500,000.00 during the entire term of this Agreement. Lugano shall be responsible for all other maintenance costs, appraisal costs, and any other costs associated with the Diamond.

5.    On or before the date that is three (3) months after the Effective Date of this Agreement, Lugano has a customer to sell the Diamond for the amount of $7,100,000.00.  In the event Lugano fails to sell the Diamond during such three (3) month period, upon five (5) days, Lugano shall return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to Investor.

6.    Upon the sale of the Diamond to customer, Lugano shall pay to Investor within five (5) business days of the sale the greater of: (a) fifty percent (50%) of the proceeds of the sale of Diamond to customer, or (b) the Investment Amount, plus interest at a rate of 25% per annum.

7.    At any time during the term of this Agreement, for any reason or no reason, at Investor's

{9469684: }

sole and absolute discretion, Investor may cash out of the Investment Amount upon five (5) days written notice to Lugano ("Cash Out Notice"). Upon receipt of such Cash Out Notice, Lugano shall return the Investment Amount to Investor, plus interest at a rate of twenty five percent (25%) per annum within five (5) days after Lugano's receipt of the Cash Out Notice.

8.      Lugano represents and warrants that the Diamond is certified and is currently valued at a price that is 30%-40% greater than $5,800,000.00. In the event that the above representation is false, or the value of the Diamond falls at any time prior to sale to customer, Lugano assumes all risk of such valuation, and Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein, or fifty percent (50%) of the proceeds of a sale of the Diamond to Customer, whichever is greater. Lugano assumes all risk of any damage or other casualty to the Diamond. Upon such damage or casualty, Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein

9.      Notwithstanding anything to the contrary contained in this Agreement, if Lugano is in breach or default of any of its obligations or agreements hereunder when performance is required, or if Lugano otherwise fails to perform in accordance with the terms of this Agreement ("Event of Default"), Investor may immediately demand the greater of: (a) a return of the Investment Amount, plus interest at a rate of 25% per annum or (b) 50% of the proceeds of a sale of the Diamond to customer ("Demand Amount"). Upon an Event of Default by Lugano, the interest on the Demand Amount shall continue to accrue at 25%.

10.     This Agreement shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

11.     Any notice required under this Agreement shall be in writing sent by email to a known address (return receipt requested), registered mail, or overnight mail, postage prepaid, signature required. All notices shall be deemed effective on the date of receipt, unless otherwise specified herein.

12.     In case of any one or more of the provisions obtained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect such invalidity, illegality, or unenforceability shall not affect the validity of any other provisions of this Agreement, and such provision(s) shall be deemed modified to the extent necessary to make it (them) enforceable.

13.     This Agreement sets forth the entire understanding between the Parties as to the subject matter hereof and shall supersede all documents verbal consents, or understandings made before the conclusion of this Agreement with respect to the subject matter hereof. None of the terms of this Agreement shall be amended or modified except in writing signed by a duly authorized officer or director of each Party to be charged.

14.     Nothing in this Agreement shall be construed to create between the Parties a partnership, association, joint venture, or agency.

15.     The Parties each represent that they are authorized to enter into the Agreement and that each has had its Attorney review the Agreement meaning there shall be no negative interpretation inferences or presumptions taken against a perceived drafter.

{9469684: }

16.    All parties to this Agreement intend to comply with applicable usury law. All existing and future agreements regarding the transactions evidenced by this Agreement are hereby limited and controlled by the provisions of this Section. In no event shall the interest taken, reserved, contracted for, charged, or received under this Agreement or under any other agreements between the parties, exceed the maximum nonusurious amount permitted by applicable law (the "Maximum Amount"). If, from any construction of any document, interest would otherwise be payable in excess of the Maximum Amount, then ipso facto, such document shall be reformed and the interest payable reduced to the Maximum Amount, without necessity of execution of any amendment or new document. If Investor hereof ever receives interest in an amount which apart from this provision would exceed the Maximum Amount, the excess shall, without penalty, be applied to the unpaid principal of this Agreement in inverse order of maturity of installments and not to the payment of interest or be refunded to Lugano if the principal is paid in full. All interest paid or agreed to be paid to the Investor shall be spread throughout the full term (including any renewal or extension) of the debt so that the amount of interest does not exceed the Maximum Amount.

[Signature Page follows]

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by their respective duly authorized representatives as of the dates below written.

INVESTOR

Sydney Holdings Limited

By: _____

Name: Katherine Tathum    William Messer
Title: Authorized Signatory

Date:    Nov-18-2024 _____

Lugano Diamonds and Jewelry, Inc.

By: _____

Name: Mordechai Ferder
Title: CEO

Date:

_____ 11/14/24 _____

_

# *SYDNEY HOLDINGS LIMITED*

64 SHEDDEN ROAD, 4TH FLOOR ANDERSON SQUARE
PO BOX 10324
GRAND CAYMAN, KY1-1003
CAYMAN ISLANDS

May 15, 2025

VIA FEDEX

Lugano Diamonds and Jewelry Inc.
545 Newport Center Drive
Newport Beach, CA 92660

Re:    Asset Ownership Agreement dated September 11, 2024 ("Agreement") by and between Lugano Diamonds & Jewelry, Inc. ("Lugano") and Sydney Holdings Limited ("Investor") for 50% ownership of a diamond described as follows: 6.03 carat, FIG Color, VS1,  GIA certified via certification #5182660588

To Whom it May Concern:

We write in regard to that certain Asset Ownership Agreement dated September 11, 2024 ("Agreement") by and between Lugano Diamonds & Jewelry, Inc. ("Lugano") and Sydney Holdings Limited ("Investor") for 50% ownership of a diamond described as follows: 6.03 carat, FIG Color, VS1,  GIA certified via certification #5182660588 (the "Diamond"), as secured by that certain Personal Guaranty Agreement dated September 11, 2024, as given by Mordechai Ferder in favor of Investor (the "Guaranty").[1]

Notice is hereby given that Lugano is in default of its obligations to Investor. Specifically, Section 5 of the Agreement provides that in the event Lugano failed to sell the Diamond within four (4) months following the Effective Date, "Lugano shall return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to Investor. More than four (4) months has elapsed since the Effective Date, yet Lugano has failed to remit to Investor its share of the proceeds from the sale of the Diamond (pursuant to Section 6 of the Agreement) and failed to return to Investor its Investment Amount plus interest (per Section 5 of the Agreement).

Pursuant to Section 9 of the Agreement, Lugano's breach constitutes an Event of Default. Investor hereby demands the immediate payment of the Demand Amount of  $3,167,213.75.

---

[1] Unless otherwise specified herein, all capitalized terms used and not defined herein have the respective meanings given to them in the Agreement.

{9854664: }

Please be advised that Investor has the present right to enforce its rights and exercise its remedies under the Agreement. Moreover, pursuant to Section 9 of the Agreement, interest on the Demand Amount shall continue to accrue interest at the rate of 25%.

The enumeration of the foregoing defaults shall not be deemed a waiver of any past, present or future violation or default of Lugano under the Agreement, and shall not directly or indirectly in any way whatsoever either: (a) impair, prejudice or otherwise adversely affect Investor's rights at any time to exercise any right, privilege or remedy in connection with the Agreement or any other contract or instrument, (b) amend or alter any provision of the Agreement or any other contract or instrument or (c) constitute any course of dealing or other basis for altering any obligation of Lugano or any right, privilege or remedy of Investor under the Agreement or any other contract or instrument or constitute any consent by Investor to any prior, existing or future violations of the Agreement. Moreover, the past or future acceptance by Investor of any partial payments shall not constitute a wavier or estoppel against Investor and shall not alter the fact that Lugano is in default under the Agreement due to the failure to pay the entire sums due.

Investor hereby reserves (a) all of its respective rights, privileges and remedies under the Agreement and each other contract or instrument executed by Lugano for the benefit of Investor, and that all of the other terms, provisions and conditions of the Agreement and such other contracts and instruments shall remain and continue in full force and effect and (b) the right to take any and all such actions, and to exercise all such rights and remedies, as are accorded to Investor under the Agreement and/or at law or in equity, and at such time or times as Investor deems appropriate.

Neither this letter nor any statement by or on behalf of Investor as to the amount due and owing under the Agreement: (i) shall constitute a waiver of any rights of Investor to collect any additional amounts to which Investor may be lawfully entitled pursuant to the terms of the Agreement or otherwise at law or in equity; or (ii) shall constitute an offer to settle or waive any rights of Investor under the Agreement.

Thank you for your prompt attention to this matter.

Very truly yours,

Sydney Holdings Limited

By: _____
Katherine Tathum
Director FCFL Directors Limited

By: _____
William Messer
Director-FCFL Directors Limited

Cc:     (via FedEx & Email)
        Mordechai Ferder
        1501 Serenade Terrace
        Corona Del Mar, California 92625
        moti@luganodiamonds.com

_____ (via Email only)
_____ Coates Lear, Esq. (coateslear@sgslitigation.com)
_____ James P. Pronti, Esq. (jpronti@woodsoviatt.com)

ASSET OWNERSHIP
AGREEMENT

**This Asset Ownership Agreement** (the "Agreement") is made and entered into effective
September [11 ], 2024 (the "Effective Date"), by and between Lugano Diamonds & Jewelry,
Inc., a California corporation ("Lugano") and Sydney Holdings Limited, an exempted company
incorporated with limited liability in the Cayman Islands ("Investor"). Investor and Lugano are
also jointly referred to herein as ("Parties") and individually as a ("Party").

## RECITALS

**WHEREAS,** Lugano has purchased a diamond with the following specifications: 6.03
carat, FIG color, VS1, GIA certified via certification #5182660588 ("Diamond") from Gem
House ("Seller") for resale to a third-party customer ("Customer"); and

**WHEREAS,** Lugano purchased the diamond from Seller for Five Million Three
Hundred Sixty Thousand and 00/100 Dollars ($5,360,000.00) and has offered Investor the
opportunity to participate in the purchase of the Diamond, and Investor is hereby accepting such
opportunity on the terms and conditions set forth herein up to an Investment of Two Million Six
Hundred Eighty Thousand and 00/100 Dollars ($2,680,000.00) (the "Investment Amount");

**NOW THEREFORE,** in consideration of the mutual and joint promises set forth herein,
and for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the Parties hereby agree as follows:

1.      The above recitals are incorporated as if set forth at length herein.

2.      Investor shall, upon full execution of this Agreement by all parties which may be done in
counterpart and delivered by email or hard copy, promptly transfer to Lugano an amount equal to the
Investment Amount to be utilized for the purchase of the Diamond from the Seller.

3.      Upon execution of this Agreement, the Diamond shall be owned 50% by Lugano and 50%
by Investor.

4.      Lugano shall maintain insurance for the Diamond, with a minimum coverage amount of
$6,000,000.00 during the entire term of this Agreement. Lugano shall be responsible for all other
maintenance costs, appraisal costs, and any other costs associated with the Diamond.

5.      On or before the date that is Four (4) months after the Effective Date of this Agreement,
Lugano has a customer to sell the Diamond for the amount of $6,550,000.00. In the event Lugano
fails to sell the Diamond during such Four (4) month period, upon five (5) days, Lugano shall
return the Investment Amount, plus interest at a rate of twenty five percent (25%) per annum to
Investor.

6.      Upon the sale of the Diamond to customer, Lugano shall pay to Investor within five (5)
business days of the sale the greater of: (a) fifty percent (50%) of the proceeds of the sale of
Diamond to customer, or (b) the Investment Amount, plus interest at a rate of 25% per annum.

7.      At any time during the term of this Agreement, for any reason or no reason, at Investor's

{9469684: }

sole and absolute discretion, Investor may cash out of the Investment Amount upon five (5) days written notice to Lugano ("Cash Out Notice"). Upon receipt of such Cash Out Notice, Lugano shall return the Investment Amount to Investor, plus interest at a rate of twenty five percent (25%) per annum within five (5) days after Lugano's receipt of the Cash Out Notice.

8.    Lugano represents and warrants that the Diamond is certified and is currently valued at a price that is 30%-40% greater than $5,360,000.00. In the event that the above representation is false, or the value of the Diamond falls at any time prior to sale to customer, Lugano assumes all risk of such valuation, and Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein, or fifty percent (50%) of the proceeds of a sale of the Diamond to Customer, whichever is greater. Lugano assumes all risk of any damage or other casualty to the Diamond. Upon such damage or casualty, Investor shall be entitled to a return on the Investment Amount as set forth in Section 6 herein

9.    Notwithstanding anything to the contrary contained in this Agreement, if Lugano is in breach or default of any of its obligations or agreements hereunder when performance is required, or if Lugano otherwise fails to perform in accordance with the terms of this Agreement ("Event of Default"), Investor may immediately demand the greater of: (a) a return of the Investment Amount, plus interest at a rate of 25% per annum or (b) 50% of the proceeds of a sale of the Diamond to customer ("Demand Amount"). Upon an Event of Default by Lugano, the interest on the Demand Amount shall continue to accrue at 25%.

10.    This Agreement shall governed by and construed in accordance with the laws of the state of New York (excluding its conflict of laws provisions if such provisions would require application of the laws of another jurisdiction).

11.    Any notice required under this Agreement shall be in writing sent by email to a known address (return receipt requested), registered mail, or overnight mail, postage prepaid, signature required.  All notices shall be deemed effective on the date of receipt, unless otherwise specified herein.

12.    In case of any one or more of the provisions obtained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable in any respect such invalidity, illegality, or unenforceability shall not affect the validity of any other provisions of this Agreement, and such provision(s) shall be deemed modified to the extent necessary to make it (them) enforceable.

13.    This Agreement sets forth the entire understanding between the Parties as to the subject matter hereof and shall supersede all documents verbal consents, or understandings made before the conclusion of this Agreement with respect to the subject matter hereof. None of the terms of this Agreement shall be amended or modified except in writing signed by a duly authorized officer or director of each Party to be charged.

14.    Nothing in this Agreement shall be construed to create between the Parties a partnership, association, joint venture, or agency.

15.    The Parties each represent that they are authorized to enter into the Agreement and that each has had its Attorney review the Agreement meaning there shall be no negative interpretation inferences or presumptions taken against a perceived drafter.

16.     All parties to this Agreement intend to comply with applicable usury law. All existing and future agreements regarding the transactions evidenced by this Agreement are hereby limited and controlled by the provisions of this Section. In no event shall the interest taken, reserved, contracted for, charged, or received under this Agreement or under any other agreements between the parties, exceed the maximum nonusurious amount permitted by applicable law (the "Maximum Amount"). If, from any construction of any document, interest would otherwise be payable in excess of the Maximum Amount, then ipso facto, such document shall be reformed and the interest payable reduced to the Maximum Amount, without necessity of execution of any amendment or new document. If Investor hereof ever receives interest in an amount which apart from this provision would exceed the Maximum Amount, the excess shall, without penalty, be applied to the unpaid principal of this Agreement in inverse order of maturity of installments and not to the payment of interest or be refunded to Lugano if the principal is paid in full. All interest paid or agreed to be paid to the Investor shall be spread throughout the full term (including any renewal or extension) of the debt so that the amount of interest does not exceed the Maximum Amount.

[Signature Page follows]

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by their respective duly authorized representatives as of the dates below written.


INVESTOR

Sydney Holdings Limited

By: _____

Name: Katherine Tathum  William Messer
Title: Authorized Signatory


Date: Sept-16-2024 _____




Lugano Diamonds and Jewelry, Inc.

By: _____

Name: Mordechai Ferder
Title: CEO


Date:

_____9/11/24_____

___

within strict time limits, see current FedEx Service Guide.

jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on

2. Place label in shipping pouch and affix it to your shipment.
1. Fold the printed page along the horizontal line.
CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH
After printing this label:

